UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PATRICK WRIGHT,  :
    Plaintiff,  :
 :
v.  :    3:07-cv-306 (CFD)
 :
CITY OF WATERBURY, et al.,  :
    Defendants.  :

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Patrick Wright, brought this action *pro se* alleging a number of violations under the U.S. Constitution associated with his arrest by Waterbury police officers, including false arrest, excessive force, sexual assault, and violation of equal protection. Waterbury police officers David McKnight, Mark Cosmos, Kenneth Keroack, Brian DiStefano, Yolanda Martinez, and Michael Allen (collectively, the "defendants") have moved for summary judgment as to all of Wright's claims, except for Wright's excessive force claim against DiStefano.[1] For the reasons that follow, the defendants' motion is granted in part and denied in part.

**I.    Factual Background**[2]

During the early hours of the morning on January 22, 2006, Patrick Wright was attending a birthday party at a home in Waterbury, Connecticut. Wright's friend, Mr. Williams, owned the

---

[1] Wright's Amended Complaint included claims against four other defendants: the City of Waterbury; Michael Jarjura, Mayor of Waterbury; Neil O'Leary, Chief of Police of the Waterbury Police Department; and Christopher Corbett, Lieutenant in the Waterbury Police Department. Wright's claims against these defendants were dismissed by this Court in its ruling dated March 26, 2009.

[2] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties, including depositions. They are undisputed unless otherwise indicated.

Waterbury home.[3] Christopher Corbett, who lived near Williams' home (and is a lieutenant in the Waterbury Police Department), called in a noise complaint to the Waterbury Police Department. At approximately 2:15 a.m., two Waterbury police officers, David McKnight and Mark Cosmos, arrived to investigate the complaint. The two officers ordered the party to end and most of the guests and hosts complied. After an exchange between Wright and officers McKnight and Cosmos, Officer McKnight told Wright that he was "going to jail." Wright subsequently retreated into the house, away from McKnight. After backup police officers were called to Williams' house, several police officers entered the house and tried to handcuff Wright. Wright gave some resistance to the arrest; as the police officers tried to restrain him, he was struck once in the right side by a police officer.[4] After handcuffing Wright and placing him in the rear seat of a patrol car, Officer Martinez, a female, ordered Wright to step outside of the patrol car with his legs spread apart. Officer Martinez frisked Wright, including touching Wright's groin area with her hands twice for "less than a second each time." Officer Mark Allen observed Officer Martinez conducting the search.

Officers Martinez and Allen took Wright to the Waterbury police station. While Wright was still handcuffed, Officer Brian DiStefano allegedly slammed his head into a concrete wall, causing Wright to suffer a laceration of his right eye. After being held in a cell at the Waterbury police station for forty-five minutes, Wright was taken to a hospital for treatment.

---

[3] Wright, however, had been living at Williams' home for approximately three months prior to January 22, 2006.

[4] Wright cannot identify the police officer who struck him but believes that it was Officer Cosmos.

Wright was acquitted of breach of peace and interfering with an officer for the events that occurred at Williams' house. For the events that took place at the police station, Wright was convicted of interfering with an officer.[5]

The defendants now move for summary judgment on the following claims: false arrest against Officers McKnight, Cosmos, and Keroack; excessive force against Officers McKnight, Cosmos, Keroack, Martinez, and Allen; sexual assault against Officers Martinez and Allen; and violation of equal protection against Officers McKnight, Cosmos, Keroack, Martinez, DiStefano, and Allen.

**II.    Discussion**

    A.    Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

---

[5] Wright was convicted under Connecticut General Statutes § 53a-167a. It also appears that Wright was charged and tried for breach of peace for the events at the police station, but the disposition of this charge is unclear from the record.

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

Where one party is proceeding *pro se*, the court must read that party's papers liberally and interpret them to raise the strongest arguments suggested. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). "Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment." Hasfal v. City of Hartford, No. 06-cv-55, 2009 WL 1870871, at *1 (D. Conn. June 25, 2009) (citing Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

B.   False Arrest

Officers McKnight, Cosmos, and Keroack claim that there was probable cause for arresting Wright inside Williams' home and, therefore, they are not liable for false arrest. In the alternative, officers McKnight, Cosmos, and Keroack claim qualified immunity.

Government officials performing discretionary functions are entitled to qualified immunity if their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known about. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to protect officials when they must make difficult "on-the-job" decisions. See Zieper v. Metzinger, 474 F.3d 60, 71 (2d Cir. 2007). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" by giving "ample room for mistaken judgments." Id. (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)). In the Second Circuit, the qualified immunity analysis consists of a three-step inquiry examining whether there is an alleged violation of a constitutional right, whether the right was clearly established at the time of the conduct, and—if the right was clearly established—whether the defendants' actions were objectively reasonable. See Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003).

"A false arrest by a state actor implicates a person's Fourth Amendment rights and may raise a cognizable claim under § 1983." Shattuck v. Town of Stratford, 233 F. Supp. 2d 301, 306 (D. Conn. 2002) (citing Cook v. Sheldon, 41 F.3d 73, 77 (2d Cir. 1994)). To prevail on a § 1983 false arrest claim, the plaintiff must establish that: "(1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause." Shattuck, 233 F. Supp. 2d at 306 (quoting Arum v. Miller, 193 F. Supp. 2d 572, 585 (E.D.N.Y. 2002).

"Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton Cnty. Sheriff, 63

F.3d 110, 118 (2d Cir. 1995). In determining whether probable cause existed, the court must examine "those facts available to the officer at the time of the arrest and immediately before it." See Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996).

Wright was arrested inside Williams' home for breach of peach and interfering with an officer. Wright claims that because the officers did not have a warrant for his arrest and because he was subsequently acquitted of both charges, there was no probable cause for his arrest. While Wright's acquittal may be relevant, it is not dispositive of whether probable cause existed; courts have held that "probable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful." Krause v. Bennett, 887 F.2d 362, 371 (2d Cir. 1989); see United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983) (stating that less evidence is required to provide probable cause for an arrest than to support a conviction). Under Conn. Gen. Stat. § 53a-167a(a), "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." The undisputed evidence shows that after Wright was told by Officer McKnight that he was "going to jail" for breach of peace, Wright turned and walked away from McKnight. Even if Williams believed he was not guilty of any crime and thought that McKnight's attempt to arrest him was illegal, the Connecticut Supreme Court has held that "the illegality of an arrest is not a defense to charges under 53a-167 [for interfering with an officer]." See State v. Davis, 804 A.2d 781, 790 (Conn. 2002); see also Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest."). Therefore,

officers McKnight, Cosmos, and Keroack had probable cause to arrest Wright for interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a(a) and the Court finds that there was no constitutional violation on this basis.[6]

Even if there was not probable cause to arrest Wright for interfering, the Court finds that the defendants are entitled to qualified immunity. "An arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Golino, 950 F.2d at 870. Under the circumstances inside Williams' home, it was objectively reasonable for the officers to believe that probable cause existed. After being told that he was "going to jail," Wright walked away from Officer McKnight and repeatedly ignored the officers' attempt to arrest him. Thus, based on the undisputed evidence, a reasonable police officer would assume that probable cause existed for Wright's arrest for interference with a police officer. Accordingly, officers McKnight, Cosmos, and Keroack are protected by qualified immunity and the defendants' motion for summary judgment as to Wright's false arrest claims is granted.

C.  Excessive Force

Wright next claims that officers McKnight, Cosmos, and Keroack used excessive force when the officers tried to handcuff and restrain him on the couch inside Williams' home. Wright also claims that officers Martinez and Allen are liable for use of excessive force due to their alleged involvement in Officer DiStefano's attack on him at the police station.

---

[6] Despite naming Officer Keroack as a defendant in the Amended Complaint, Wright has submitted no evidence of Keroack's involvement in his arrest.

The Fourth Amendment protects individuals from the use of excessive force by a police officer during an arrest. See U.S. Const. amend. IV (stating that people shall "be secure in their persons . . . against unreasonable . . . seizures"); Graham v. Connor, 490 U.S. 386, 394 (1989) ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment"). The test for determining excessive force requires the court to balance the extent of the force used "against the countervailing government interests at stake." See id. at 396. This evaluation must be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and with an awareness that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. at 397.

   1.   *The Arrest at Williams' Home*

As to Wright's first claim, Wright contends that he was struck in the right side while being restrained in Williams' home. Wright also claims that, when the officers were arresting him, Officer Keroack allegedly grabbed him and pushed the back of his head down towards the couch to restrain him and Officer McKnight allegedly tried to grab Wright's throat.[7] Wright has not produced sufficient evidence to show that the defendants' use of excessive force was not reasonable under the circumstances. While striking an arrestee in the side could certainly constitute excessive force, the undisputed evidence in this case shows that Wright had previously

---

[7] Wright also complained that his right arm and shoulder were painful when the officers tried to put his arms behind his back to handcuff him. Wright, however, testified in his deposition that he had previously injured his right shoulder in Jamaica and that the officers did not know that his right arm was sensitive.

fled from the police inside Williams' home and that Wright made it difficult for the officers to handcuff him by standing rigid. The force used by the officers was not excessive, given the circumstances. Because Wright repeatedly refused to cooperate with the officers, the conduct of officers McKnight, Cosmos, and Keroack was reasonable and, consequently, the Court finds no constitutional violation.

Additionally, even if the officers' use of force was not reasonable, the Court finds that the officers are entitled to qualified immunity. "The right of an individual not to be subjected to excessive force has long been clearly established." Calamia v. New York, 879 F.2d 1025, 1036 (2d Cir. 1989). Nonetheless, an officer who violates this right is entitled to qualified immunity "[i]f the officer's mistake as to what the law requires is reasonable." Saucier v. Katz, 533 U.S. 194, 205 (2001). "In the context of an excessive force claim, 'the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances.'" Faulks v. City of Hartford, No. 3:08-cv-270, 2010 WL 259076, at *11 (D. Conn. Jan. 19, 2010) (quoting Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995)). Here, Wright ignored the officers' initial attempt to arrest him, walked away from the arresting officers, and stood rigid as the officers tried to restrain and arrest him. Therefore, a reasonable officer could have believed that the level of force used to restrain Wright was objectively reasonable under the circumstances. Accordingly, officers McKnight, Cosmos, and Keroack are entitled to qualified immunity and the defendants' motion for summary judgment as to Wright's excessive force claims against the officers is granted.

### 2. The Injury at the Police Station

As to Wright's excessive force claims against officers Martinez and Allen, Wright does not claim that either Officer Martinez or Officer Allen used physical force against him at the police station. Rather, Wright claims that the officers are responsible for failing to stop Officer DiStefano from attacking him.

"[A] law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). To establish a claim for an officer's failure to intervene, "a plaintiff must prove the existence of a 'realistic opportunity to intervene to prevent the harm from occurring,' in addition to knowledge that excessive force is being used." See White v. Francis McDermott, No. 3:08cv634, 2010 WL 4687620, at *2 (D. Conn. Nov. 4, 2010) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).

Based on Wright's deposition testimony, Officer DiStefano allegedly slammed Wright's head against the wall at the police station and held it there for approximately one or two seconds. The evidence shows that Officer Allen was about three feet away from Officer DiStefano when this alleged attack occurred and Officer Martinez was next to Officer DiStefano. Officer Martinez appeared to initiate the confrontation between DiStefano and Wright by moving toward Wright and telling him to face the wall after he stared at her police badge. Almost immediately after Officer Martinez confronted Wright, Officer DiStefano approached Wright from behind and attacked him.

Determining whether an officer had a "realistic opportunity" to intervene is often a factual question for the jury to decide. See Anderson, 17 F.3d at 557 ("Whether an officer had

sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."). There is sufficient evidence to preclude granting summary judgment as to Wright's excessive force claim against Officer Martinez. While Wright claims that Officer DiStefano was the one who actually slammed his head into the wall, Officer Martinez apparently initiated the confrontation by approaching Wright. Wright even testified in his deposition that Martinez "set it off," referring to Martinez's role in the incident, and stated that she "made the first move." Thus, a genuine dispute of material fact remains as to what role Officer Martinez played in the attack on Wright. As for Officer Allen, however, the undisputed evidence shows that he did not have a "realistic opportunity" to intervene with DiStefano. In fact, Wright testified in his deposition that the entire incident lasted only two or three seconds and that there was "[n]o warning, nothing" prior to the incident to alert Officer Allen of a possible attack. Based on these facts, no reasonable jury could conclude that Officer Allen could have prevented the alleged attack. See O'Neill, 839 F.2d at 11–12 ("Even when the evidence is viewed in the light most favorable to the plaintiff, there is insufficient evidence to permit a jury reasonably to conclude that [the police officer's] failure to intercede was a proximate cause of the beating. The three blows were struck in such rapid succession that [the police officer] had no realistic opportunity to attempt to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator."). Accordingly, the defendants' motion for summary judgment as to Wright's excessive force claim against Officer Martinez is denied and the defendants' motion for summary judgment as to Wright's excessive force claim against Officer Allen is granted.

D.   Sexual Assault

Wright also alleges that officers Martinez and Allen sexually assaulted him when they searched him outside of Williams' home, prior to being transported to the police station. In particular, Wright claims that Officer Martinez made contact with his groin area on two occasions while searching him and also claims that Officer Allen did not stop Officer Martinez from conducting the allegedly inappropriate search.[8]

Sexual misconduct by a police officer during a "seizure" is analyzed under the Fourth Amendment.[9] See Poe v. Leonard, 282 F.3d 123, 136–37 (2d Cir. 2002); Love v. Town of Granby, No. Civ.3:03 CV 1960, 2004 WL 1683159, at *4–5 (D. Conn. July 12, 2004); see also Fontana v. Haskin, 262 F.3d 871, 878 (9th Cir. 2001) (noting that "the Fourth Amendment protects a criminal defendant after arrest on the trip to the police station"). "Beyond the specific proscription of excessive force, the Fourth Amendment generally proscribes unreasonable intrusions on one's bodily integrity, and other harassing and abusive behavior that rises to the level of unreasonable seizure." Love, 2004 WL 1683159, at *5 (quoting Fontana, 262 F.3d at 878–79). "[T]o determine whether a search is reasonable within the meaning of the Fourth Amendment, courts examine the totality of the circumstances. In considering the totality of the circumstances . . . we take into account the facts known to the officers, and balance the privacy-related and law enforcement-related concerns." See Palacios v. Burge, 589 F.3d 556,

---

[8] Wright does not allege that Officer Allen made any inappropriate sexual contact with him.

[9] Wright does not contest that the alleged sexual assault occurred while he was under arrest. Accordingly, the Fourth Amendment reasonableness standard applies rather than the Fourteenth Amendment substantive due process inquiry.

563–64 (2d Cir. 2009) (internal quotations and citations omitted). "Of course, not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment. Some bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable." Fontana, 262 F.3d at 880.

There is no genuine dispute as to the facts with respect to the alleged sexual assault on Wright. According to Wright's deposition testimony, Officer Martinez's palm cupped Wright's groin area, while she was frisking him, on two occasions. The contact with Wright's groin area was brief—according to Wright, the alleged inappropriate sexual contact lasted for "less than a second each time." The Court finds that Officer Martinez's conduct does not rise to the level of unreasonableness required for a Fourth Amendment violation. First, a police officer's search of an arrestee of the opposite sex, absent other improper conduct, does not constitute a violation of the Fourth Amendment. See Stokes v. City of New York, No. 05-CV-0007, 2007 WL 1300983, at *12 n.9 (E.D.N.Y. May 3, 2007) ("[C]ourts have repeatedly found that the fact that a pat-down search incident to arrest is conducted by an officer of the opposite sex of the arrestee does not, absent some additional evidence of improper conduct during the search, convert a lawful search incident to arrest into an unlawful one."). Officer Martinez's search was reasonable—Martinez did not grab Wright's groin area or touch underneath his clothing, and the search of Wright's groin area was extremely quick. See Garcia v. N.Y. State Police Investigator Aguiar, 138 F. Supp. 2d 298, 303–04 (N.D.N.Y. 2001) (dismissing female plaintiff's Fourth Amendment sexual assault claims against a male police officer who "cupped" the plaintiff's crotch and breasts during a pat frisk). Additionally, Officer Martinez made no inappropriate verbal remarks while

conducting the search. See Love, 2004 WL 1683159, at *5 (noting that the police officer used profanity towards the suspect while grabbing his groin area).

Wright's only allegation against Officer Allen is that he was standing in close proximity to Officer Martinez while she conducted the search of him and failed to intervene. Because Officer Martinez's search was reasonable, it was also reasonable for Officer Allen to not intervene.

Finally, even if Officer Martinez's cross-gender search of Wright was to be determined a constitutional violation, the Court finds that Officer Martinez and Officer Allen are protected by qualified immunity. Officer Martinez's search was objectively reasonable—in the course of a pat down search, regardless of gender, it is not unreasonable that a police officer's hands would make contact with an arrestee's groin area and Wright does not claim that Officer Martinez's search of his groin area involved any other inappropriate conduct. Furthermore, because Officer Martinez's cross-gender search was objectively reasonable, it was also objectively reasonable for Officer Allen to not believe any constitutional violation was occurring that required him to intervene. Accordingly, officers Martinez and Allen are entitled to qualified immunity, and the defendants' motion for summary judgment as to Wright's sexual assault claims is granted.

E.   Equal Protection

In the Amended Complaint, Wright alleges a violation of equal protection. Based on Wright's allegations and deposition testimony, it appears that Wright alleges a "class of one"

equal protection claim.[10] Specifically, Wright claims that he was treated differently from the other attendees of the party at Williams' home on January 22, 2006.

A plaintiff may allege a "class of one" equal protection claim by claiming that the plaintiff has been intentionally treated differently from others similarly situated to the plaintiff and that there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). A "class-of-one plaintiff[] must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. This showing is more stringent than that used at the summary judgment stage in the employment discrimination context." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006) (internal citations omitted). In fact, "the standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are *prima facie* identical." Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005) (internal quotation marks omitted) (emphasis in original), overruled on other grounds by Appel v. Spriridon, 531 F.3d 138, 139–40 (2d Cir. 2008).

> Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

Clubside, 468 F.3d at 159 (quotations omitted). "Generally, whether parties are similarly situated is a fact-intensive inquiry. A court may grant summary judgment in a defendant's favor

---

[10] Wright has not alleged that the Waterbury police discriminates against a protected class of people, such as people of color.

on the basis of lack of similarity of situation, however, where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated." Id. (citations omitted).

Wright does not offer any evidence of how he was treated differently than someone who was similarly situated as him. First, Wright was not the only person at Williams' home who was arrested on the morning in question, January 22, 2006. Darrell Brown, an African-American male, was also arrested for interfering with an officer. Thus, Wright's arrest, by itself, is not evidence of differential treatment. To the extent that Wright alleges that the manner in which he was arrested violates his right to equal protection, the circumstances of Wright's situation and those of Brown (or anyone else) at Williams' home on January 22, 2006, are sufficiently different to preclude a finding that Wright was similarly situated. The evidence shows that Wright did not follow police orders (he tried to walk away from the police) and that he resisted arrest. Due to these circumstances, any difference in treatment between Wright and Brown, or any other person at Williams' home, does not amount to a violation of equal protection under a "class of one" claim. Accordingly, the defendants' motion for summary judgment as to Wright's equal protection claim is granted.

### III. Conclusion

Accordingly, the defendants' motion for summary judgment [Dkt # 57] is GRANTED IN PART AND DENIED IN PART.

Because no claims against officers McKnight, Cosmos, Keroack, and Allen remain, those defendants are removed as parties to this action. Wright's excessive force claims against officers DiStefano and Martinez for the alleged attack at the police station remain.

SO ORDERED this <u>23rd</u> day of March 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**